United States District Court
Southern District of Texas
**ENTERED**
May 09, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MONZELLE L. STEPTOE, <br> TDCJ #01622644, <br><br> Petitioner, <br> VS. <br><br> WILLIAM STEPHENS, Director, Texas Department of Criminal Justice, Correctional Institutions Division, <br><br> Respondent. | § § § § § § § § § § § § | CIVIL ACTION NO. 3:14-CV-381 |

## MEMORANDUM AND ORDER

State inmate Monzelle Steptoe (TDCJ #01622644) has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. The Respondent has filed a motion for summary judgment (Dkt. 35) accompanied by the relevant state-court records (Dkt. 36 and Dkt. 37), to which Steptoe has responded (Dkt. 39 and Dkt. 40). After reviewing all of the pleadings, the record, and the applicable law, the Court concludes that Steptoe's petition is time-barred.

### I.   BACKGROUND

This case arises out of a carjacking that took place in a Kroger supermarket parking lot in Alvin, Texas on December 13, 2008 (Dkt. 36-13 at pp. 14–25). A man approached a parked white minivan, pointed a gun at the driver, and forced his way into the driver's seat (Dkt. 36-13 at pp. 14–25). Once inside the van, the man demanded that the driver start the car, give him her purse, and stay in the front passenger seat (Dkt. 36-13 at pp. 14–25). When the driver instead screamed and attempted to escape though the

front passenger-side door, the robber began beating her over the head with the gun and choking her (Dkt. 36-13 at pp. 23–25). The struggle drew the attention of other supermarket customers, and the robber fled on foot (Dkt. 36-13 at pp. 23–25).

Investigators zeroed in on Steptoe because they found his cell phone at the crime scene, approximately ten feet from the minivan (Dkt. 36-14 at pp. 17–21). During the investigation, Steptoe gave written and videotaped statements admitting to the crime and expressing remorse, and the victim picked Steptoe's picture out of a photo lineup (Dkt. 36-14 at pp. 34–35, 38–40; Dkt. 37-15 at pp. 20–21). The victim also identified Steptoe in open court (Dkt. 36-13 at pp. 17–18). On January 22, 2010, a Brazoria County jury found Steptoe guilty of aggravated robbery and aggravated kidnapping (Dkt. 36-15 at p. 37).

Steptoe appealed his conviction, and the Fourteenth Court of Appeals of Texas affirmed the trial court on January 6, 2011 (Dkt. 36-19). *Steptoe v. State*, No. 14-10-00131-CR, 2011 WL 61854 (Tex. App.—Houston [14th Dist.] Jan. 6, 2011, pet. ref'd). The Texas Court of Criminal Appeals issued a "final ruling" denying review on August 9, 2011 (Dkt. 36-2). *See* Texas Court of Criminal Appeals Case Number PD-0264-11.

Steptoe also sought habeas relief in the Texas state courts. His first habeas petition, filed on June 30, 2011, was dismissed by the Texas Court of Criminal Appeals on September 7, 2011 because Steptoe filed it while his direct appeal was still pending (Dkt. 37-10 at pp. 1–3). *See* Texas Court of Criminal Appeals Case Number WR-51,851-03. Steptoe properly filed a state habeas application on, at the earliest, March 27, 2013

(Dkt. 37-14 at pp. 23–25).[1] *See* Texas Court of Criminal Appeals Case Number WR-51,851-05. The Texas Court of Criminal Appeals denied that application on June 12, 2013 (Dkt. 37-14 at p. 2).

Steptoe also previously sought habeas relief in this Court. He filed a habeas petition on October 26, 2011, which this Court dismissed without prejudice for failure to exhaust state-court remedies on March 1, 2013. *See* Southern District of Texas Case Number 3:11-CV-516 at Dkt. 1 and Dkt. 33. However, the Court, also on March 1, 2013, mistakenly entered a final judgment dismissing the case *with* prejudice, which necessitated the entry of a corrective order on January 29, 2014. *See* Southern District of Texas Case Number 3:11-CV-516 at Dkt. 34 and Dkt. 36. The Court's corrective order stated "that the time between the date of final judgment [March 1, 2013] and the entry date of this order [January 29, 2014] is tolled for limitations purposes." *See* Southern District of Texas Case Number 3:11-CV-516 at Dkt. 36.

Steptoe filed the instant habeas petition on November 7, 2014 (Dkt. 1 at p. 13).[2]

## II. THE ONE-YEAR STATUTE OF LIMITATIONS

---

[1] Steptoe's state habeas application was deemed filed on the date on which he deposited that application into the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 578–79 (5th Cir. 2013). The Court is assuming that Steptoe deposited his state habeas application into the prison mailing system on the date on which he signed it. The application was actually postmarked one day later, on March 28, 2013 (Dkt. 37-14 at p. 64).

[2] Because the dismissal in Case Number 3:11-CV-516 was without prejudice for failure to exhaust state remedies, the instant petition is not "second or successive" within the meaning of the federal habeas statutes. *Slack v. McDaniel*, 529 U.S. 473, 485–86 (2000); *Adams v. Thaler*, 679 F.3d 312, 321 (5th Cir. 2012).

This federal habeas petition is subject to the one-year limitations period found in 28 U.S.C. § 2244(d). *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998). Section 2244(d) provides as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### A. The Trigger Date and Tolling—The Parties' Contentions

Respondent argues that the applicable limitations trigger date is the date on which Steptoe's conviction became final (Dkt. 35 at pp. 9–10). *See* 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has, as Steptoe did, pursued relief on direct appeal through his

state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, which is the expiration of time for filing a petition for writ of certiorari with the United States Supreme Court. *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008). In Steptoe's case, that date was November 7, 2011, ninety days after the Texas Court of Criminal Appeals refused his petition for discretionary review. If that is the correct trigger date, then the statute of limitations barred suit on November 7, 2012.

Respondent further argues that the limitations period was not tolled by the provisions of 28 U.S.C. § 2244(d)(2) (Dkt. 35 at pp. 10–12). According to Respondent, Steptoe's first state habeas application, though it was filed in time to trigger the tolling provisions, failed to do so because it was not *properly* filed; and Steptoe's first federal habeas application, though it was also filed in time, failed to toll limitations because it was not an application for state collateral review. These are correct statements of the law. *See Larry v. Dretke*, 361 F.3d 890, 894–96 (5th Cir. 2004) (holding that a state habeas application is not "properly filed" in Texas when it is filed during the pendency of a direct appeal);[3] *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (holding that an application for federal habeas corpus review is not an "application for State post-conviction or other collateral review" within the meaning of 28 U.S.C. § 2244(d)(2) and therefore does not toll limitations period).

---

[3] Steptoe also attempted to file an "application for a writ of certiorari" with the Court of Criminal Appeals on August 10, 2011; on September 7, 2011, the Court of Criminal Appeals denied leave to file the application (Dkt. 37-11). *See* Texas Court of Criminal Appeals Case Number WR-51,851-04. Because this filing by Steptoe did not comply with Texas procedures for obtaining collateral review of felony convictions, it likewise did not toll limitations. *See Larry v. Dretke*, 361 F.3d 890, 894–96 (5th Cir. 2004).

In his briefing, Steptoe provides two reasons why he believes his petition is not time-barred (although the first reason is necessarily specific to certain Fourth Amendment claims):

(1) The petition is timely under 28 U.S.C. § 2244(d)(1)(C) because Steptoe filed his petition within a year of the date on which the United States Supreme Court issued its opinion in *Riley v. California*, 134 S.Ct. 2473 (2014) (Dkt. 39 at pp. 1–3); and

(2) Steptoe is actually innocent (Dkt. 39 at pp. 4–8).

The Court rejects Steptoe's arguments and agrees with Respondent.

**B.** *Riley v. California*

In *Riley v. California*, the Supreme Court held that law enforcement officers must generally get a warrant before searching the information stored on a cell phone, even if the cell phone is seized incident to arrest. *Riley*, 134 S.Ct. at 2493–95. Steptoe argues that *Riley* is factually analogous to his case because investigators examined data on his cell phone, which was found at the scene of the crime, without a warrant. The Supreme Court issued the *Riley* opinion well after Steptoe's conviction became final, and Steptoe argues that *Riley* reset his limitations trigger date because it outlined a newly recognized Constitutional right that was made retroactively applicable to cases on collateral review. *See* 28 U.S.C. § 2244(d)(1)(C).

The Court disagrees. Although it is fair to say that *Riley* both examines similar facts and announced a new rule of criminal procedure, there is no indication that the *Riley* holding was made retroactively applicable to cases on collateral review. First, *Riley* does

not explicitly state that it is to be applied retroactively. *See Tyler v. Cain*, 533 U.S. 656, 663 (2001) ("We thus conclude that a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive."). Second, the *Riley* opinion does not meet either exception to the *Teague* bar. *See id.* at 664–67 & n.7; *see also id.* at 668–70 (O'Connor, J., concurring).

*Teague v. Lane*, 489 U.S. 288 (1989), bars retroactive application of new rules of Constitutional criminal procedure. *Beard v. Banks*, 542 U.S. 406, 416 (2004). In order for a new Constitutional rule to apply retroactively to cases that became final before the rule's announcement, the rule must fit one of the two exceptions also set forth in *Teague*. *In re Williams*, 806 F.3d 322, 325 (5th Cir. 2015). The first exception, which is not even arguably applicable to the *Riley* rule, includes new substantive rules forbidding criminal punishment of certain primary conduct or prohibiting certain categories of punishment for classes of defendants on account of status or offense. *Id.* The second exception, which Steptoe is presumably shooting for, covers "a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding . . . or implicit in the concept of ordered liberty." *Id.* (quotation marks and footnotes omitted).

The Court notes that the second exception is, by the Supreme Court's design, extremely narrow. As the Supreme Court has put it, "any qualifying rule would be so central to an accurate determination of innocence or guilt that it is unlikely that many such components of basic due process have yet to emerge[.]" *Beard*, 542 U.S. at 417 (quotation marks and brackets omitted). The Supreme Court has, in fact, never held that a

new rule fell under the second *Teague* exception; and it has only given one example of a rule that even "might" do so: the right to counsel announced in *Gideon v. Wainwright* in 1963. *Id.*; *see also Williams*, 806 F.3d at 325.

Fourth Amendment jurisprudence seems particularly unlikely ever to produce a "watershed rule" within the meaning of *Teague*. In *Stone v. Powell*, 428 U.S. 465, 494–95 (1976), the Supreme Court held that a federal court may not grant habeas relief to a state prisoner on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial, unless the prisoner was denied a full and fair opportunity to litigate his Fourth Amendment claim in the state courts. The *Stone* Court grounded this policy decision on its telling description of the Fourth Amendment exclusionary rule as a "diver[sion] from the ultimate question of guilt or innocence that . . . deflects the truthfinding process, and often frees the guilty." *Id.* at 490. Since the *Teague* "watershed rule" exception only concerns itself with rules that are "central to an accurate determination of innocence or guilt"—*Beard*, 542 U.S. at 417 (quotation marks omitted)—it is hard to see how the exception would ever embrace any expansion of a rule that the Supreme Court considers a "diversion" from that very determination. And *Stone* itself could, and likely would, render the entire exercise pointless in the federal habeas context by categorically barring the Fourth Amendment claim even if *Teague* saved it from the one-year limitations period.

The Court therefore holds that *Riley* was not made retroactively applicable to cases on collateral review and that 28 U.S.C. § 2244(d)(1)(C) does not provide the limitations trigger date for any of Steptoe's claims. Although it does not appear that either the Fifth

Circuit or any district court within it has addressed Steptoe's argument, other district courts have, and they have reached the same result as this Court. *See, e.g., Chatman v. Green*, No. PWG-15-2827, 2016 WL 1588496, at *2 (D. Md. Apr. 19, 2016); *Cross v. Gilmore*, No. 1:15-CV-1114, 2016 WL 393952, at *4 (E.D. Va. Jan. 29, 2016).

### C. Actual Innocence

Steptoe also invokes the "actual innocence" gateway. He argues that a DNA swab from his cell phone, which the prosecution "intentionally and knowingly withheld[,]" will establish that Steptoe did not commit the crimes for which he was convicted (Dkt. 39 at pp. 4–5). One of the lead detectives testified at Steptoe's trial that a DNA swab was taken from Steptoe's phone; the prosecution's lab report does not indicate that the swab was ever tested, though other swabs gathered at the scene were (Dkt. 36-14 at pp. 46–47; Dkt. 37-15 at pp. 48–50). Steptoe unsuccessfully moved in the Texas state courts for post-conviction DNA testing of the cell phone swab pursuant to Chapter 64 of the Texas Code of Criminal Procedure. *See Steptoe v. State*, No. 14-15-00538-CR, 2016 WL 316399, at *2–3 (Tex. App.—Houston [14th Dist.] Jan. 26, 2016, no pet.) (affirming denial of motion because "identity was not at issue" and Steptoe "admitted to being the perpetrator").

A prisoner who has filed an untimely federal habeas application can overcome the one-year statute of limitations with a convincing showing of "actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). The actual-innocence exception described in *McQuiggin* is grounded in the miscarriage-of-justice exception—*Id.* at 1932—which is a narrow exception applicable only in extraordinary cases. *Calderon v.*

9 / 14

*Thompson*, 523 U.S. 538, 559 (1998). Thus, tenable actual-innocence claims are "rare[.]" *McQuiggin*, 133 S. Ct. at 1928. "The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 1936 (quotation marks omitted; quoting *Schlup v. Delo*, 115 S. Ct. 851, 861 (1995)).

For the purposes of the miscarriage-of-justice analysis, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). As the Fifth Circuit has further explained, "actual innocence" means "factual" as opposed to "legal" innocence, with "legal" innocence meaning that a constitutional violation by itself requires reversal and "factual" innocence meaning that the person actually did not commit the crime. *Johnson v. Hargett*, 978 F.2d 855, 859–60 (5th Cir. 1992); *see also Calderon*, 523 U.S. at 559 ("The miscarriage of justice exception is concerned with actual as compared to legal innocence.") (internal brackets and quotation marks omitted).

*McQuiggin* does not save Steptoe's petition. Steptoe, to begin with, has not presented any new evidence; and the *McQuiggin* exception only "applies to a severely confined category: cases in which *new evidence shows* it is more likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin*, 133 S. Ct. at 1933 (quotation marks and brackets omitted; italics added). The trial record reflects that both Steptoe and his counsel knew about the untested DNA swab at the time of Steptoe's trial,

and they even brought it to the jury's attention. Steptoe's counsel referred to the swab during closing arguments:

> In addition, to the evidence that you heard today there was a cell phone. That officer testified that it was submitted to the lab for DNA testing. That report was not entered into evidence as to whether the results came back with someone else's DNA on it other than Mr. Steptoe's.
> Dkt. 36-15 at p. 28.

Steptoe also referred to the swab in open court, in a brief outburst that was apparently directed at the jury as it left to begin deliberations:

> Ask them why the DNA wasn't admitted on the phone. I didn't do nothing. They can't prove nothing.
> Dkt. 36-15 at p. 37.

In any event, the mere fact that the prosecution did not test all of the DNA evidence that it collected is not at all probative of Steptoe's actual innocence, and it certainly does not shake this Court's confidence in the outcome of the trial to the extent *McQuiggin* requires.

At trial, the forensic scientist who conducted the DNA testing explained that the samples were what she called "touch" DNA samples, where a technician simply swabs a surface "to see if anybody left skin cells behind" (Dkt. 36-14 at pp. 98–99). "Touch" samples, the scientist testified, are "less rich in cells" than samples derived from bodily fluids such as blood, semen, or saliva and are therefore generally of lower quality, more adulterated, and more difficult to interpret (Dkt. 36-14 at pp. 98–99). This explains, for instance, why the scientist's report could neither definitively exclude nor definitively identify Steptoe as the source of samples collected from the passenger seat of the minivan

(Dkt. 37-15 at pp. 48–50). The prosecutor, to his credit, was candid about the relative weakness of touch DNA samples, saying in his closing argument that "[t]he DNA didn't come back to say that it was this defendant. . . . This is a perfect example of a case where CSI type of DNA evidence does not make the case" (Dkt. 36-15 at p. 30).

But the state did not need a DNA match. Steptoe's cell phone was found at the crime scene; Steptoe confessed to the crime, both in writing and on videotape; and the victim picked Steptoe's picture out of a photo lineup and identified him in open court. Given that evidence, the DNA samples were essentially an afterthought.

Steptoe has not satisfied the requirements of *McQuiggin*. His conviction became final on November 7, 2011, ninety days after the Texas Court of Criminal Appeals refused his petition for discretionary review. Under 28 U.S.C. § 2244(d)(1)(A), the statute of limitations ran on November 7, 2012. No special circumstances exist, and no tolling doctrines apply. As discussed above, this Court did judicially craft a tolling period that extended from March 1, 2013 to January 29, 2014 to alleviate any harm created by the imprecise wording of a final judgment. *See* Southern District of Texas Case Number 3:11-CV-516 at Dkt. 36. However, limitations had run by March 1, 2013 anyway. Steptoe's first properly filed habeas petition, which he filed on March 27, 2013 (Dkt. 37-14 at pp. 23–25), was also too late to toll limitations.

The Court will dismiss Steptoe's federal habeas petition as time-barred.

### III. CERTIFICATE OF APPEALABILITY

The federal habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), codified as amended at

28 U.S.C. § 2253. Therefore, a certificate of appealability is required before an appeal may proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its assessment and ruling debatable or wrong.

Because the petitioner does not otherwise allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## IV. <u>CONCLUSION</u>

Based on the foregoing, the Court **ORDERS** as follows:

1. The Respondent's motion for summary judgment (Dkt. 35) is **GRANTED**. All other pending motions are **DENIED** as moot.

2. The habeas corpus petition is **DENIED**, and this case is **DISMISSED** with prejudice.

3. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Galveston, Texas, on _May 5_, 2016.

                                                        GEORGE C. HANKS, JR.
                                                      UNITED STATES DISTRICT JUDGE